UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 20-129-DLB

REGINALD MYERS                                                                     PLAINTIFF

v.                      **MEMORANDUM OPINION & ORDER**

ALLEN BEARD, JR.                                                DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant Allen Beard's renewed Motion to Dismiss or alternatively for Summary Judgment. (Doc. # 28). This Motion has been fully briefed and is ripe for the Court's review. (Docs. # 32 and 35). For the reasons set forth herein, Defendant's Motion is **granted**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Reginald Myers was incarcerated at FCI Ashland, a federal correctional institution located in Ashland, Kentucky, where Defendant Beard serves as the warden. (Doc. # 1 at 1). Myers alleges he arrived at FCI Ashland in December 2019 and that he had single cell status at his previous holding facilities because he is blind. (*Id.* at 2). He explains that being alone in a cell allows him to avoid people stealing his belongings or him unintentionally offending a cellmate in a shared space. (*Id.* at 7). Myers asserts that his requests for single cell status were ignored, and he was placed in a cell with another inmate. (*Id.* at 2). On April 22, 2020, Myers was attacked by two inmates, one of whom was his cellmate. (*Id.*). He was injured and taken to receive stitches at a nearby hospital. (*Id.*). After he returned, he was placed in isolation whereas his assailants were released

1

after two weeks with no further disciplinary action. (*Id.* at 7). Later, he was placed in an eight-person cell, which he claims was not handicap friendly and put his life in even greater danger, especially considering the COVID-19 pandemic. (*Id.*).

Moreover, Myers alleges that proper COVID-19 precautions were ignored at FCI Ashland, such as disinfecting surfaces, which put him in danger because he touches surfaces to find his way around. (*Id.* at 8). Because of this alleged assault, his treatment thereafter, and the sanitary conditions of the facility, Myers filed this action alleging violations of the American with Disabilities Act ("ADA"), the Eighth Amendment under a failure to protect theory, and a general violation of his civil rights. (*Id.* at 3, 7-8). Myers states that his experience at FCI Ashland triggered his severe post-traumatic stress disorder ("PTSD") and caused him severe psychological trauma, mental stress, and anxiety. (*Id.* at 8).

II.  ANALYSIS

   A.  Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Granting a motion to dismiss is appropriate if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As the Supreme Court explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a motion to dismiss, a court should "construe the complaint in the light most favorable to the plaintiff" and "accept all well-pleaded factual allegations as

true." *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570).  However, "mere conclusory statements do not suffice" and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 678-79.

Courts may consider not only exhibits attached to the complaint without converting a motion to dismiss into a motion for summary judgment, but also "public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  If the parties ask the court to consider matters outside the pleadings and the court opts to consider those outside materials, the motion to dismiss must be converted to a motion for summary judgment and evaluated under the corresponding standard in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 12(d); *Spencer v. Grand River Navigating Co., Inc.*, 644 F. App'x 559, 561-62 (6th Cir. 2016) (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)).  Because the exhibits attached to the Defendant's Motion (Docs. # 28-1, 28-2, 28-3, 28-4, 28-5 and 28-6) fall outside the pleadings, and the Court considers those exhibits below, the Court will utilize the summary judgment standard in its analysis.[1]

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[1]  In Myers' Complaint form, he indicated that he had filed a grievance related to the Complaint prior to filing this lawsuit.  (Doc. # 1 at 3).  He also wrote that there was no response to his grievance "due to an attempt to cover up a violation" of the ADA.  (*Id.*).  While these facts arguably establish Defendant's exhibits relating to Myers' grievance record "as referenced in the complaint and central to the claims contained therein," the Court will not stretch the bounds of what it can consider when evaluating a motion to dismiss in this case.  *See Bassett* 528 F.3d at 430.

3

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000) (internal quotation marks and citations omitted).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  If the non-moving party cannot meet that burden,

4

summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23. While granting summary judgment prior to a plaintiff's opportunity to conduct discovery is not the norm, Rule 56 does not prevent a court from granting summary judgment before any discovery is taken and several courts have done so. *Littleton v. Ridley USA, Inc.*, No. 5:17-CV-479-JMH, 2018 WL 1369913, at *4 (E.D. Ky. Mar. 16, 2018) (collecting cases).

### B. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA"), codified at 42 U.S.C. § 1997e, makes clear that "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." Exhaustion of administrative remedies is mandatory because "the dominant concern of the PLRA is to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotation marks and citations omitted); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Since the PLRA is a mandatory exhaustion statute, judicial discretion is foreclosed. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Moreover, administrative remedies must be exhausted in full conformity with the agency's rules *prior* to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 92-94 (2006). "Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier*, 636 F.3d at 225 (internal citations omitted).

Here, the parties agree that Myers has failed to exhaust administrative remedies; instead, Myers argues that it was not possible for him to exhaust administrative remedies

5

because the necessary forms were not made available to him upon request.  (Docs. # 28-1 at 8 and 32 at 5).  He alleges that he "requested the initial BP-8 form to begin the administrative grievance process for not accommodating his disability with a private cell," but was refused the form by prison staff.  (Docs. # 32 at 5 and 32-1 ¶¶ 9-12).  While it is true that a "prisoner need not exhaust remedies if they are not 'available,'" *Ross*, 578 U.S. at 636, there are only three circumstances where that is the case: (1) when "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate" the process; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 643-44.

As an initial matter, Myers is no stranger to the administrative process; he has filed a total of 47 remedy requests with the Bureau of Prisons during his incarceration.  (Doc. # 28-2 at 2).  Even assuming that Myers was refused access to the forms to file his grievance as to the assault or COVID allegations related to this matter—which would arguably fall under the first or third circumstance for unavailability—he was still able to file several other unrelated grievances in the months that followed his assault.  (Docs. # 28-2 at 2 and 28-4 at 4); *Sango v. Fleury*, No. 21-2597, 2022 WL 2163519, at *2 (6th Cir. May 4, 2022) (Plaintiff's "claim that he was unable to utilize the grievance system is belied by his record of grievances.").  However, those grievances were all related to complaints about Myers' participation in the Inmate Financial Responsibility Program, not his Eighth Amendment or COVID claims.  (Docs. # 28-2 at 2, 28-5 at 2-4, and 28-6 at 2-4).  Even Myers indicates in his Response that when he was seeking grievance forms that he was

trying to file a grievance related to the staff's *refusal to provide him with his own cell*, not the assault nor COVID allegations to which this lawsuit is related.  (Doc. # 32 at 5).

If the Court allowed Myers to pursue these claims without first following the administrative grievance process, it would run afoul of the PLRA.  The PLRA was designed to protect against situations in which a prisoner simply chooses not to file a grievance and proceeds to file a claim in federal court.  *Napier*, 636 F.3d at 225.  The record makes clear that Myers was in fact able to file grievances (because he did so after the assault) but failed to file any complaint related to his alleged assault or COVID claims.  While the grievance process was available to him, Myers still failed to exhaust the appropriate administrative remedies; therefore, no reasonable jury could find that Myers had exhausted his administrative remedies and summary judgment is appropriate.  *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) ("When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies.") (internal citations omitted).

Accordingly, Myers' Eighth Amendment and COVID claims are barred by the PLRA's exhaustion requirement and for that reason summary judgment is appropriate.[2]

---

2    The Court will not address Myers' claims on the merits because the PLRA exists to "allow prison officials a 'fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected, and to create an administrative record for those disputes that eventually end up in court."  *Napier*, 636 F.3d at 226 (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)).

### III. CONCLUSION

Thus, for the reasons articulated herein, **IT IS HEREBY ORDERED** as follows:

(1) Defendant's Motion to Dismiss or alternatively for Summary Judgment (Doc. # 28) is **GRANTED**;

(2) This civil action is **DISMISSED WITHOUT PREJUDICE** and shall be **STRICKEN** from the Court's active docket; and

(3) The Court will enter a corresponding Judgment with this Order.

This 2nd day of August, 2022.



Signed By:
*David L. Bunning*  DB
**United States District Judge**

K:\DATA\ORDERS\Ashland Civil\2020\20-129 MOO.docx